# UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| In re: ) <br> ) <br> CHARLENE ALLEN JEFFRIES, ) <br> ) Case No. 05-72296-SCS <br> *Debtor.* ) <br> _____ ) <br> ) <br> CHARLES L. MARCUS, TRUSTEE, ) <br> ) APN 06-07075-SCS <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> CHARLENE ALLEN JEFFRIES, ) <br> ) Chapter 7 <br> *Defendant.* ) <br> _____ ) | |

## MEMORANDUM OPINION

This matter comes before the Court upon the Motion for Summary Judgment ("Motion") filed by the Plaintiff, Charles L. Marcus, Chapter 7 Trustee, in the above-captioned matter. Upon consideration of the pleadings and arguments therein, the Court makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

The Debtor filed, by counsel, a voluntary petition under Chapter 7 of the Bankruptcy Code on April 22, 2005. Charles L. Marcus was appointed the Chapter 7 Trustee. The Debtor received her Chapter 7 discharge on August 1, 2005.

On March 7, 2006, the Chapter 7 Trustee filed a Motion for Turnover of Property of the Estate ("Motion for Turnover") in the Debtor's bankruptcy case. *See* Charlene Allen Jeffries, Case

No. 05-72296-SCS, Docket Entry No. 15, Motion for Turnover, filed March 7, 2006. In the Motion for Turnover, the Chapter 7 Trustee asserted that the Debtor had completed the refinance of the mortgage on her residential real property with the consent of the Chapter 7 Trustee, and with the agreement that the proceeds would be turned over to the Chapter 7 Trustee upon the completion of that process. The Chapter 7 Trustee argued that the refinancing process had been completed, but that the Debtor had not turned over the proceeds from the refinancing process over to the bankruptcy estate. *Id.* at 2.

Counsel for the Debtor filed a response on the Debtor's behalf. *See* Charlene Allen Jeffries, Case No. 05-72296-SCS, Docket Entry No. 19, Response to Motion for Turnover, filed March 24, 2006. In the response, the Debtor admitted that she had refinanced her property, but stated that she used the proceeds from the refinancing process to pay off a debt on her motor vehicle and to make the mortgage payments on her residential real property. *Id.* at 1. She further stated that she would be able to refinance again in the "near future" and would pay the proceeds from that refinancing process into the bankruptcy estate. *Id.*

A hearing was held on the Chapter 7 Trustee's Motion for Turnover on March 30, 2006, at which the Debtor and counsel for both the Debtor and the Chapter 7 Trustee appeared. Based upon the representations and arguments of the parties, the Court granted the Motion for Turnover, and the order reflecting the Court's ruling was entered on April 12, 2006. *See* Charlene Allen Jeffries, Case No. 05-72296-SCS, Docket Entry No. 21, Order Granting Motion for Turnover, entered April 12, 2006. The Order Granting Motion for Turnover provided "that the Debtor acquired property of the estate, namely proceeds from the refinance of the mortgage on her residence ('the Proceeds') to purchase the non-exempt equity from the estate and has knowingly failed to deliver or surrender such

Proceeds to the Trustee or account for such Proceeds . . . ." Accordingly, the Court ordered the Debtor to turn over to the Chapter 7 Trustee the proceeds from the refinancing of the mortgage. Order Granting Motion for Turnover, at 1.

On July 20, 2006, the Chapter 7 Trustee filed a Complaint to Revoke the Debtor's Discharge. *See* Charles L. Marcus, Trustee, v. Charlene Allen Jeffries, Case No. 05-72296-SCS, A/P No. 06-7075-SCS, Docket Entry No. 1, Complaint to Revoke Discharge, filed July 20, 2006 (hereinafter, "Complaint"). In the Complaint, the Chapter 7 Trustee moved to revoke the Debtor's Chapter 7 discharge pursuant to 11 U.S.C. § 727(d). The Chapter 7 Trustee represents that the assets of the Debtor's bankruptcy estate included her residential real property, located in Portsmouth, Virginia, and that, per a comparative market analysis provided to the Chapter 7 Trustee by the Debtor, the residence retained non-exempt exposed equity of approximately $25,000.00. Complaint, at 2. The Chapter 7 Trustee states that counsel for the Debtor had advised him that the Debtor wished to purchase the non-exempt equity portion of her residence from the bankruptcy estate, so as to avoid the sale of the property, and proposed refinancing her mortgage as the method of acquiring funds to so do. *Id.* The Chapter 7 Trustee asserts that he agreed to the Debtor's proposal and advised the Debtor of the amount required to pay the unsecured debt and his commission. *Id.* While it is not entirely clear from the Complaint, it appears from the representations of the Chapter 7 Trustee that this transaction was not completed in a timely fashion, leading counsel for the Debtor to request additional time to complete the refinancing process. The Chapter 7 Trustee, according to his Complaint, agreed to a deadline of September 30.[1] *Id.*

---

[1] As the underlying bankruptcy case was filed on April 22, 2005, and the Complaint was filed on July 20, 2006, the Court deduces that the deadline to which the Complaint refers must have occurred in September, 2005.

3

The Chapter 7 Trustee asserts that, after the deadline for the refinancing process passed, he contacted counsel for the Debtor to ascertain the status of the process, but received no response. The Chapter 7 Trustee represents that he was later contacted by a mortgage broker who confirmed that the Debtor had in fact refinanced her residential real property. After learning this fact, the Chapter 7 Trustee filed the Motion for Turnover, which was granted, as set forth above. *Id.* According to the Chapter 7 Trustee, even though the Debtor admitted that she retained the proceeds from the refinancing of her residential real property, and despite the Court's order to do so, the Debtor had still, as of the date of the filing of the Complaint, "failed and refused to deliver them to the Trustee." *Id.* In the Complaint, the Chapter 7 Trustee argues that the proceeds are property of the estate which should be administered for the benefit of the creditors pursuant to 11 U.S.C. § 541. The Chapter 7 Trustee further argues that the Debtor has failed to obey both the Order Granting Motion for Turnover and the Administrative Order, the latter of which was entered in the Debtor's bankruptcy case on April 27, 2005. Specifically, the Chapter 7 Trustee asserts that the Debtor failed to obey that portion of the Administrative Order which required the Debtor to preserve and protect her property, cooperate with the Chapter 7 Trustee, and prohibited her from transferring any of her property. *Id.* at 3.

The Debtor, by counsel, timely filed an Answer to the Complaint. *See* Charles L. Marcus, Trustee, v. Charlene Allen Jeffries, Case No. 05-72296-SCS, A/P No. 06-7075-SCS, Docket Entry No. 6, Answer to Complaint to Revoke Discharge, filed August 23, 2006 (hereinafter, "Answer"). In her Answer, the Debtor admits that she filed a voluntary petition, that Mr. Marcus was appointed

4

Chapter 7 Trustee, and that she received a discharge from her debts.[2] *Id.* at 1.

With regard to the refinancing process, the Debtor asserts that "[s]ince the time of her discharge, she has been pursued consistently by the Plaintiff Trustee Charles L. Marcus in an attempt to extract funds from her that she does not have." *Id.* The Debtor further states that the proceeds from the refinancing of her residential real property were not sufficient to pay the Chapter 7 Trustee the amount that he was requesting, and had she paid these proceeds to the Chapter 7 Trustee, she would not have had sufficient funds to pay the mortgage payments, which she asserts doubled as a result of the refinancing. *Id.* at 2. The Debtor further argues that she "did not fail to obey the turnover order on purpose" but instead, "[w]hen she received her discharge, she thought she had been released." *Id.* Finally, she argues that she "attempt[ed] to satisfy" the Chapter 7 Trustee's request by refinancing her home and believed that she was in compliance with all orders. *Id.*

A Pretrial Conference was held in this matter on September 14, 2006, which counsel for both parties attended. At that conference, a trial date of January 23, 2007, was established. The Court issued its standard Pretrial Order, setting forth, among other things, the deadlines for discovery and motions. *See* Charles L. Marcus, Trustee, v. Charlene Allen Jeffries, Case No. 05-72296-SCS, A/P No. 06-7075-SCS, Docket Entry No. 9, Pretrial Order, entered September 18, 2006.

On September 22, 2006, counsel for the Chapter 7 Trustee filed a Motion for Summary Judgment. No response was filed by the Debtor or by her counsel on her behalf.

---

[2] In her Answer, the Debtor does not make representations that she admits or denies the specific factual statements that are set forth in the Complaint. Instead, the Answer sets forth her own statements.

5

## II. ARGUMENTS

In his Motion, the Chapter 7 Trustee asserts that the facts alleged in the Complaint are undisputed, and therefore, there is no genuine issue of material fact for the Court to reconcile. *See* Charles L. Marcus, Trustee, v. Charlene Allen Jeffries, Case No. 05-72296-SCS, A/P No. 06-7075-SCS, Docket Entry No. 11, Motion for Summary Judgment, filed September 22, 2006 (hereinafter, "Motion"). The Chapter 7 Trustee asserts that it is undisputed that the Debtor failed to obey both the Order Granting Motion for Turnover and the Administrative Order. *Id.* at 2.

With regard to the applicable law in this case, the Chapter 7 Trustee asserts that, pursuant to Section 727(d)(3) of the Bankruptcy Code, a debtor's discharge may be revoked if the debtor refuses to obey a lawful court order. *Id.* at 3. The Chapter 7 Trustee asserts that the Debtor in the instant matter has failed to obey two orders of the Court and thus, her discharge should be revoked. *Id.*

Alternatively, the Chapter 7 Trustee argues that he is entitled to relief under Section 727(d)(2), which provides that a debtor's discharge will be revoked if the debtor acquired property of the estate and knowingly and fraudulently failed to surrender that property to the Chapter 7 Trustee. *Id.* at 3-4. In support of this argument, the Chapter 7 Trustee argues that the Debtor acquired property of the estate in the form of the non-exempt exposed equity following the refinancing of her residential real property, and despite the conditions set forth by the Chapter 7 Trustee, knowingly and fraudulently failed to deliver the proceeds to the Trustee. *Id.* at 4.

As stated above, the Debtor chose not to file any response to the Chapter 7 Trustee's Motion for Summary Judgment. Thus, the Court cannot elaborate on any possible arguments the Debtor would have made beyond those which are asserted in the Answer to the Complaint to Revoke Discharge. The Debtor argues in her Answer to the Complaint that she did not then nor does she

now have the funds to pay the amount requested by the Chapter 7 Trustee into the bankruptcy estate. Further, she argues that she attempted to satisfy the Chapter 7 Trustee's request by refinancing her home and that she believed she was in compliance with the Court's orders. While it is distressing to the Court to proceed to adjudicate the Chapter 7 Trustee's Motion for Summary Judgment in the absence of a response, the Court will follow the requirements mandated by Rule 7056 of the Federal Rules of Bankruptcy Procedure and draw inferences from the underlying facts in the light most favorable to the Debtor as the non-moving party.

### III. CONCLUSIONS OF LAW

The standard governing a motion for summary judgment is found in Rule 56 of the Federal Rules of Civil Procedure, as incorporated into the Federal Rules of Bankruptcy Procedure through Rule 7056. As this Court has previously stated, summary judgment will be granted if two elements are proven. The first requirement commands that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *In re Prof'l Coatings (N.A.)*, 210 B.R. 66, 72-73 (Bankr. E.D. Va. 1997) (quoting Fed. R. Civ. P. 56(c)). With respect to this element, the Supreme Court has defined "material fact" as "one that might affect the outcome of the suit." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden of establishing that there is no genuine issue of material fact rests upon the moving party and must be proven by a preponderance of the evidence. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991); *King v. Speaks (In re Speaks)*, 193 B.R. 436, 440 (Bankr. E.D. Va. 1995)).

The second requirement is that "'the moving party is entitled to judgment as a matter of

law.'" *Id.* at 73. There are several threshold standards with regard to this requirement. First, summary judgment will not be granted if the non-moving party can demonstrate that a genuine issue of material fact exists such that, if resolved in favor of the non-moving party, would preclude the ultimate relief sought by the moving party. *Id.* (quoting *Anderson*, 477 U.S. at 248). Integral to this determination is that a motion for summary judgment can be granted only if "'there can be but one reasonable conclusion" as to the outcome of the case. *Id.* (quoting *Official Comm. of Unsecured Creditors ex rel. S. Galeski Optical Co. v. Estate of Galeski (In re S. Galeski Optical Co.)*, 169 B.R. 360, 362 (Bankr. E.D. Va. 1994); citing *Anderson*, 477 U.S. at 248). Finally, when considering a motion for summary judgment, the Court "'should draw all inferences from the underlying facts in a light most favorable to the nonmoving party.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1976); *In re Speaks*, 193 B.R. at 440).

In his Complaint, the Chapter 7 Trustee seeks the revocation of the Debtor's discharge pursuant to Section 727(d)(3) for the Debtor's failure to obey two Court orders. Section 727(d)(3) is the only legal basis upon which the Chapter 7 Trustee seeks relief in his Complaint, and thus, the only source of law, if any, upon which the Court could grant the Chapter 7 Trustee's Motion for Summary Judgment. Therefore, the Court will not address the Chapter 7 Trustee's assertion that Section 727(d)(2) provides an alternate basis for relief.

Section 727(d)(3) provides that, "[o]n request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if . . . the debtor committed an act specified in subsection (a)(6) of this section . . . ." 11 U.S.C. § 727(d)(3) (2006). Subsection (a)(6)(A) of Section 727, when read in conjunction with Section 727(d)(3), provides that the debtor's discharge will be revoked if the debtor "has

refused, in the case . . . to obey any lawful order of the court . . . ." *Id.* § 727(a)(6). As a result, Section 727(d)(3) ensures that the bankruptcy estate and the creditors will remain protected if the debtor receives her discharge but later refuses to obey a court order. *See Jordan v. Smith*, - - - B.R. - - -, No. 2:06CV380, 2006 WL 2787885, at *2 (E.D. Va. Sept. 26, 2006)(citing *Katz v. Araujo (In re Araujo)*, 292 B.R. 19, 22 (Bankr. D. Conn. 2003)), *aff'g on other grounds*, *Smith v. Jordan (In re Jordan)*, - - - B.R. - - -, No. 05-70093-A, APN 06-7035, 2006 WL 2925214 (Bankr. E.D. Va. June 13, 2006).

Section 727(a)(6)(A) thus provides for the revocation of a debtor's discharge if that debtor "refuses" to obey a lawful Court order. The term "refuse" is not defined in the Bankruptcy Code. *Gillman v. Green (In re Green)*, 335 B.R. 181, 183 (Bankr. D. Utah 2005). A recent opinion in this District discusses the split among the various courts with regard to whether an action to revoke discharge pursuant to Sections 727(d)(3) and 727(a)(6) requires a showing of willfulness or intent in refusing to obey a Court order. *See Jordan*, - - - B.R. - - -, 2006 WL 2787885, at *3 (citing *In re Araujo*, 292 B.R. at 23; *In re Gentry*, 275 B.R. 747, 754 (Bankr. W.D. Va. 2001)). As the Judge Smith stated, the majority of courts have found that the word "refused" does in fact require the showing of a willful or intentional act, not merely the showing of a mistake or the inability to comply. *Id.* (citing numerous cases). A minority of courts, however, have found that an action to revoke discharge brought under Sections 727(d)(3) and 727(a)(6) should be treated as a civil contempt proceeding, thus negating the requirement for a showing of willfulness or intent. *Id.* (citing *Hunter v. Magack (In re Magack)*, 247 B.R. 406, 409-10 (Bankr. N.D. Ohio 1999); *United States v. Richardson (In re Richardson)*, 85 B.R. 1008, 1011 (Bankr. W.D. Mo. 1988)). The United States District Court concluded that the majority approach was correct, and held that

> [A] trustee seeking a revocation of discharge must establish that the debtor willfully and intentionally refused to obey the court's order. Thus, the trustee must show more than a mere failure to obey the court's order that results from inadvertence, mistake, or inability to comply; he must demonstrate some degree of volition or willfulness on the part of the debtor.

*Id.* (citing *Gillman v. Green (In re Green)*, 335 B.R. 181, 184 (Bankr. D. Utah 2005)). The Court further stated that "the trustee may meet his burden by showing that the debtor received the order in question and failed to comply with its terms." *Id.* (citing *Missouri ex rel. Nixon v. Foster (In re Foster)*, 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006); *LaBarge v. Ireland (In re Ireland)*, 325 B.R. 836, 838 (Bankr. E.D. Mo. 2005); *Katz v. Araujo (In re Araujo)*, 292 B.R. 19, 24 (Bankr. D. Conn. 2003); *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 349-50 (Bankr. E.D. Mich. 1999)). "'Such a showing then imposes upon the debtor an obligation to explain [her] non-compliance.'" *Id.* (quoting *In re Foster*, 335 B.R. at 716).

In *Jordan*, the Court found that trustee had demonstrated that the debtor had the requisite knowledge of the contents of the Administrative Order that she disobeyed, as the debtor did not dispute that she received the Administrative Order. The Court further found that "the trustee presented sufficient evidence . . . that the debtor 'unequivocally' failed to obey the Administrative Order when she refinanced her real estate and eliminated any non-exempt equity that could have been used to satisfy unsecured creditors." *Id.* at *4. As a result, the Court held that, "[t]he fact that the debtor received the Administrative Order and simply ignored and acted contrary to its directives is sufficient, under the majority standard . . . adopted by this court, to constitute a refusal to obey the order." *Id.*

Upon consideration of the pleadings and under the standard as announced by the District Court as well as the standard for determination of a motion for summary judgment, this Court finds

10

that the Chapter 7 Trustee's Motion for Summary Judgment should be granted. First, with regard to the material facts of the case, it is undisputed that the Court entered the Order Granting Motion for Turnover, said order being entered by this Court on April 12, 2006, and that such order directed the Debtor to turn over to the Chapter 7 Trustee the proceeds from the refinancing of the mortgage. According to the Chapter 7 Trustee's Complaint and by the Debtor's own admission in her Answer, the Debtor failed to pay to the Chapter 7 Trustee the proceeds from the refinancing of the property as ordered by this Court. While that Order was somewhat vague to the extent that it did not provide for a date certain by which the Debtor was required to turn over the proceeds from the refinancing, certainly three months (the approximate amount of time that elapsed between the date of entry of the Order Granting Motion for Turnover and the date of the filing of the Complaint in this matter) was more than sufficient time for the Debtor to comply with the Court's Order. Further, the Debtor states in her Answer to the Complaint that she "did not have $25,000.00 to turnover to Trustee." Thus, the Debtor has implicitly admitted that she has failed to obey the Order Granting Motion for Turnover. Additionally, the Court takes judicial notice of the hearing held on the Motion for Turnover on March 30, 2006, which was attended not only by Debtor's counsel, but the Debtor herself. The Debtor was thus present when the Court ruled in favor of the Chapter 7 Trustee on his Motion for Turnover, thereby obviating any argument that the Debtor could postulate that she was unaware of the Order of the Court. No appeal of the Court's Order was made nor has any reconsideration, modification, or vacation of the Order been requested by the Debtor. Further, the Court's records indicate that the Order Granting Motion for Turnover was sent both to the Debtor and her Counsel at their respective addresses of record. The Court has no record of any returned mail for either the Debtor or her counsel.

Similarly, it is undisputed that the Court entered its standard Administrative Order in this case on April 27, 2005, and that the Debtor also received a copy of this order. This order commands that the Debtor shall, among other things, cooperate with the Chapter 7 Trustee, protect and preserve her property, and refrain from transferring her property. Further, that order directs the Debtor to obey all orders of the Court even after the discharge is granted. Finally, the order warns that "[a] discharge may be revoked, for cause." *See* Charlene Allen Jeffries, Case No. 05-72296-SCS, Docket Entry No. 8, Administrative Order to Debtor, entered April 27, 2005. There is no dispute that the Debtor received this order as well. Therefore, the Court finds that the Chapter 7 Trustee has shown, by a preponderance of the evidence, that there is no genuine issue of material fact.

The Court must now answer the question of whether the Chapter 7 Trustee is entitled to judgment as a matter of law, given that the burden shifts to the Debtor, after the trustee meets his burden, to explain why she failed to comply with the terms of the Court's order. The Debtor states not once but twice in her Answer that she "did not have $25,000.00 to turnover to Trustee," that she "did not have any proceeds to 'turnover' to Trustee," and that "the 'proceeds' from the refinancing of the house was not enough to pay Trustee what he was requesting." *See* Charles L. Marcus, Trustee, v. Charlene Allen Jeffries, Case No. 05-72296-SCS, A/P No. 06-7075-SCS, Docket Entry No. 6, Answer to Complaint to Revoke Discharge, filed August 23, 2006, at 2. However, the Debtor also states that she "believed that she was complying with all orders in attempting to refinance her real estate." *Id*. What the latter response of the Debtor fails to take into account is that the Order Granting Motion for Turnover did not deal with the mechanics of the refinancing process, but rather, with the disposition of the proceeds she received from the refinancing of her residential real property following the Chapter 7 Trustee's agreement to the procedure.

12

The Debtor attempts to convince this Court in her Answer that she did not have the ability to comply with either of the orders at issue. While it may well be true that the Debtor does not now have the ability to comply with the Court's Orders because she has spent the proceeds from the refinancing process, this circumstance belies the fact that the Debtor had control over the funds following the refinancing process, and instead of paying them to the Trustee per their agreement and pursuant to the Administrative Order issued by this Court, the Debtor chose not to do so. The actions of the Debtor in this case cannot be likened to those by the Debtor in *Gillman v. Green (In re Green)*, 335 B.R. 181, 184 (Bankr. D. Utah 2005). In that case, the Chapter 7 Trustee made demand upon the debtor to turn over certain tax refunds that the debtor had received. Distinguishing that case from the instant matter is the fact that, by the time the Chapter 7 Trustee had made his demand upon the debtor to turn over the tax refunds, the debtor had already spent the money she received. Thus, the Court determined that the debtor there did not refuse to obey a lawful court order because the order was not in place at the time the debtor acted.[3] *Id.*

---

[3] A mere failure to obey a court's order that results from inability to perform or comply with an order may also be asserted as a defense to a civil contempt proceeding. *See Maggio v. Zeitz (In re Luma Camera Serv.)*, 333 U.S. 56, 73-74 (1948). However, where the inability to perform results from the willful transfer of property by the debtor, such a defense may be unavailing. Illustrative is *Clay v. Waters*, 178 F. 385 (8th Cir. 1910), where a debtor willfully transferred a portion of his bankruptcy estate. There, the assertion by the debtor of his defense to an order of contempt of his present inability to comply with the court's order and surrender the property because it had been transferred to third parties was aptly denied:

> Concede that the defendant was entitled to his locus poenitentiae, when he was called upon by plenary suit to bring the property wrongfully withheld by him into court and surrender its physical possession to the trustee, it was a notification to him that he had contemned the order of adjudication. Instead of making immediate restitution, he resisted until another mandate was made upon him by order and decree of court. Failing to obey that, when cited for contempt, he comes, and by his return in effect says that, in order to carry out the purpose to disregard the adjudication in bankruptcy and to circumvent the final decree of the court, 'I transferred the property to third

13

The Court imposed upon the Debtor certain duties, including to cooperate with the Chapter 7 Trustee and to obey all Court orders even after the discharge is granted, and the Debtor's actions with regard to the events following the refinancing process show a failure to perform those duties. This Court does not believe that the Debtor's statements regarding her actions and the circumstances surrounding this transaction demonstrate the systemic "inability to comply" of which Judge Smith

---

> parties, and, as I cannot literally comply by restoring the property in kind, I should stand acquitted of any intentional contempt.' The impudence of such a defense is equaled only by its impotence.
>
> . . . .
>
> The defendant has failed to comply with the order of the court to surrender this property. As a reason why he should not be dealt with as for contempt, he says, as already stated, that he had put it out of his power to surrender the property in kind, by its fraudulent transfer to third parties. Of this we observe: (1) He did not disclose during the pendency of the suit that he had thus disposed of the property. Under the issues as made by the bill and answer, the complainant and this court assumed up to the date of the final decree that the property in suit was in statu quo, in the possession of the defendant. His silence established that status. Why should not the rule be applied to him that commands that he who stands silent when he should speak shall not be heard thereafter when he does speak? The inability of a party to specifically perform may under certain circumstances avail as a defense to such command; but it stands as an inflexible rule of common sense and common justice that, where the contemnor creates the inability to perform in anticipation of an order of court commanding him to transfer and deliver, he rather aggravates than extenuates his offense.

*Id.* at 399 (citations omitted).

Here, the Debtor now defends the revocation of her discharge by asserting her present inability to pay over the monies to the Chapter 7 Trustee required by this Court's order after refinancing her residence and causing the disbursement of the proceeds therefrom in direct contradiction of the order's requirements. While even assuming the Debtor's asserted present inability to pay is as valid and absolute as she asserts, she elected to close the refinancing of her home and disburse the proceeds in a manner materially different than this Court's order required, an order containing provisions of which she was well aware. To now permit her to successfully assert an inability to pay as a defense which she created by her violation of this Court's order would be illogical, imprudent, and would permit her to keep the fruit of her bankruptcy—her discharge—while she has intentionally failed to perform her duties as a debtor.

14

alludes to in the *Jordan* opinion. The fact that the Debtor did not structure the refinance of her residential real property so as to receive funds equal to the full amount of the non-exempt exposed equity that, according to a comparative market analysis provided to the Chapter 7 Trustee by the Debtor herself, the property retained does not demonstrate an inability to comply, but rather, an unwillingness to do so. Likewise, the Debtor's failure to turn over any amount of proceeds from the refinancing process to the Chapter 7 Trustee also demonstrate an unwillingness to cooperate and a failure to fulfill her duties as a Debtor under the Bankruptcy Code. This type of behavior cannot be sanctioned by the Court.

In addition to their similarity to the *Jordan* case, the facts of this case also bear resemblance to those faced by the court in *LaBarge v. Ireland (In re Ireland)*, 325 B.R. 836, 838 (Bankr. E.D. Mo. 2005). The Chapter 7 Trustee in that case also filed a motion to compel the debtors to turn over property of the bankruptcy estate, namely, certain tax refunds that they had received. The debtors did not respond to the motion, and accordingly, the Court entered an order granting the Chapter 7 Trustee's motion, directing the debtors to turn over the refunds by a date certain. A copy of the order was mailed to both the debtors and their attorney. *Id.* at 837. When the debtors failed to comply with the order directing turnover of the tax refund, the Chapter 7 Trustee filed an adversary proceeding requesting that the debtors' discharge be revoked and to enter judgment in his favor in the amount of the tax refund. *Id.* at 838. The *Ireland* Court granted the trustee's request to revoke the debtors' discharge under the same standard announced in the *Jordan* case. Specifically, the *Ireland* Court found that the debtors were on notice of the Turnover Order since the order had been mailed both to the Debtors and to their counsel. Further, the debtors neither contended that they had not received that order, nor did they file any request for relief from that order. On that basis, the

15

Court found that the debtors willfully and intentionally refused to obey the Turnover Order and revoked the debtors' discharge. *Id.*

Thus, as a matter of law, the Court finds that the Chapter 7 Trustee would prevail on his Complaint. The Chapter 7 Trustee has met his burden of showing that there is no dispute that the Debtor received the Order Granting Motion for Turnover and failed to comply with its terms. Further, the facts also clearly demonstrate that the Debtor failed to obey the Administrative Order by her failure to obey the Order Granting Motion for Turnover. Additionally, by her failure to turn over the funds to the Chapter 7 Trustee following the refinancing of her residential real property, the Debtor has violated the Administrative Order by failing to cooperate with the Chapter 7 Trustee.

The Debtor has failed make any showing that there is a genuine issue of material fact. Even taking the pleadings and the inferences therein in the light most favorable to the Debtor, the Court is unable to postulate a genuine issue of material fact in this case. Further, the Debtor has failed to come forward with any excuse to justify, or even explain, her failure to obey the Court's Order which granted the Chapter 7 Trustee's Motion for Turnover. In addition, the Debtor never requested that this Court reconsider, vacate, or otherwise modify the Order Granting Motion for Turnover. There is no dispute that the Debtor was aware of the Court's Order. Furthermore, it is clear to the Court that its Order was not obeyed. Therefore, under the standard announced by the District Court in the *Jordan* case, the Court finds that the Chapter 7 Trustee is entitled to judgment as a matter of law.

Therefore, based upon the findings of fact and conclusions of law, the Court finds that the Chapter 7 Trustee's Motion for Summary Judgment should be granted.

A separate order will issue.

The Clerk shall deliver copies of this Order to Carolyn Camardo, Counsel for the Trustee; and to George E. Talbot, Jr., Counsel for the Defendant.

**Entered: October 24, 2006, at Norfolk, Virginia.**

STEPHEN C. ST. JOHN
United States Bankruptcy Judge

NOTICE OF JUDGMENT OR ORDER
Entered on docket
OCT 2 4 2006